Good morning, and may it please the court. Lori Sabransky for Officers Reeves and Bazzi. I'm going to try my best to save five minutes for my rebuttal. All right, and if you could speak up just a little bit, please. Sure, thank you. Or pull the microphone a little closer. I'll scoot a little closer. Is that better? Yes. Thank you. This appeal presents a narrow qualified immunity question. Whether the officers responding to this active gun threat are entitled to qualified immunity on plaintiff's unlawful arrest claim. That's all we have in front of us is the qualified immunity issue. That is it. All the other claims, the lawfulness of the high risk stop, the force that was used, the searches, the punitive damages, all of that has been adjudicated in the officer's favor. So there's no need to get sidetracked by any of that. The only conduct the district court found unconstitutional was the duration of the investigative stop, which was briefly extended by officer Bazzi's eight minute redeployment to help secure the adjacent parking lot, which at that time presented the greater safety risk. To put the timing... So the fact that the district court entered summary judgment to the other side on this partial summary judgment on this fact that there was this long stop or all of that, that is not in front of us.  Only thing is in front of us is whether even though they did that, they have immunity from what they did. That's correct. And to put the timing of the stop in perspective, that eight minute redeployment is less time than it will take me to make my opening argument to you this morning. And under Supreme Court precedent, the question is not whether the investigative stop could have been shorter, but whether the officers were diligent in responding to the demands of the situation that was before them. So what I'd like to talk about this morning is the clearly established prong of the qualified immunity analysis. And the clearly established question, Your Honor, to your point, what we're talking about this morning is this, whether it was clearly established that during an investigative stop in an active gun investigation, officers violated the Fourth Amendment by briefly keeping the detainee secured while responding to a more acute adjacent safety threat from the same incident. The essence of plaintiffs and the district court... Well, counsel, can I ask? I mean, if we're looking at the clearly established prong, we have to look at it on interlocutory review in the light most favorable to plaintiff's allegations. And you're framing this in a way that is shaded a little bit more towards the city of Fairfield and the police. Right? I don't really think that's true. I mean, we have to look the totality of the circumstances, but the facts that underlie this are not disputed. Well, let me... Well, I guess you're proposing that... Is it officer Bassey needed to go over to that parking lot in order to help secure it? But as I understand it, there were already maybe 12 to 14 officers present. Yeah. My point is not that he needed to. My point is that he had the discretion to and that officers in the field... So how do you deal with sharp, you know, which talks about the need to be diligently pursue a means of investigation likely to confirm or dispel reasonable suspicion. So, you know, the plaintiff has stopped on a reasonable suspicion basis because there might be a concern that there's a firearm in the car on her person. Officers are able to ascertain right away that there's no one else in the car with her. But there's this eight minute delay in searching the car itself for the firearm as officer Bassey goes over somewhere else. Why does that not violate clearly established law under SHARP? Because SHARP stands for the general proposition that you have to be diligent about this, but it also says you have discretion in the field to make these decisions. The clearly established prong requires... How much would that extend? So let's say if officer Bassey went and decided to go investigate a completely different crime, you know, and it took two hours, are we now getting into an unreasonable land? Or what, is there a timeframe here? Well, there is no bright line timeframe for any of this. Cases are very wide on their timeframes. But what is important is for officer Bassey in this decision is for clearly established prong, plaintiff needs to produce a case that says, under these particular factual situations where you have this missing firearm, where the mission is to find this, where there's this parking lot, where there's a bunch of people over there, the gun is missing and there's risk for crossfire, that the officer has the discretion to make the decision in that moment that there are needed there more than they are needed at this stop. And there's no case that says that. So there's nothing to instruct these officers that in that type of circumstance, they are forbidden from this. The general principles of Sharp and all of these other cases are fine as principles, but they do not help officers and figure out what to do in the moment facing those facts. That's why the clearly established prong is there. What do I do with Chamberlain? The 1989th circuit case. In that case, two individuals were approached by an officer, tempted to flee. The officer caught one of them, placed him in the back of the patrol car. He then left him, searched for the other prospect. By the time the officer returned, 20 minutes had elapsed. The Ninth Circuit held that, although, and I'm quoting, no doubt this was reasonable, good faith police work on the part of the officer. The 20-minute detention restricted Chamberlain's liberty beyond that of a Terry stop and thus constituted an arrest. Here, we have Houston left in the patrol vehicle for 20 minutes. The process was delayed by Officer Besai going to investigate the potential suspect in the parking lot. However, this case, I don't know how we're going to be distinguished because Chamberlain falls right there. Well, actually, Your Honor, Chamberlain is completely inapplicable in my view. Chamberlain-  Because the clearly established prong of qualified immunity needs cases that are factually, squarely governing the situation the officers face. I tried to make it about as square as I could. Well, but Chamberlain wasn't a gun case. There was no gun involved. There was no public safety threat. There was no adjacent scene that was trying to be coordinated so that the officers could find a gun. The threat was completely different. In Chamberlain, it was a custodial interrogation. They drove somebody away from the scene and they interrogated them for 20 minutes inside a police car. They were just hoping to see, if something else had turned up to find some evidence. That is not our case. So the clearly established analysis the Supreme Court has told us over and over again is so particular about factual similarity. If you do not have a case on facts that squarely govern what these officers were faced, then you do not have clearly established authority, which means qualified immunity applies. What about the Washington case? It's briefed quite a bit. And under that Ninth Circuit precedent, our court held that under very similar facts with the level of intrusion here, that this amounted to an arrest without probable cause. Why isn't that clearly established? Thank you for that question because Washington is probably the most important thing I can talk to you about today. Washington is the only case the district court relied on and it is a case plaintiff heavily relies on. The facts in Washington, first of all, were very, very, very different than this. Just involve basically mistaken identity of two people that were having dinner at Burger King, chased him back to the hotel. They did a high risk stop. They thought there was some vague resemblance to some robbery suspects. That's it. There was no gun involved. There was no safety threat. There was no coordination of locations. It was a very different danger profile. The district court and plaintiff acknowledge that it's just not factually similar. Those factual distinctions are enough to allow qualified immunity because they do not clearly establish that the officers should not have done what they were facing here. But there's no established danger profile for Ms. Houston. There's no criminal record on her. There's nothing to suggest that she was with these people or potentially involved in having the firearm. I just don't understand why Officer Bassey decided to go somewhere else or even Officer Reeves and not search the car right away. Had the officers searched the car and found nothing, would they have been able to detain her further? If the officers had searched the car and found nothing, then she would have been released. Then why would she be a flight risk? Because that's one of the justifications that comes up in the briefing. Why would there be a flight risk if there's no authority to detain her once you clear that suspicion? Thank you. I think that's a very legitimate question. But the problem goes back to Washington, which gets back to where we started this conversation. Because Washington is factually distinct, but the district court and plaintiff use it kind of the way Your Honor is using it now to say, Washington creates this framework, these factors, these rules that we have to apply to judge whether investigative stop was reasonable or whether it turned into an arrest. Flight risk was one of those factors that the Washington court talked about. But Washington does not do that. In fact, Washington says specifically that it rejects bright line rules and that the reasonableness depends on the totality. And you have to look at the contextual analysis of what is happening. What Washington did was it said, when we're looking at whether this was too intrusive, we know that there are cases that have said in special circumstances, police officers can use more intrusive tactics.  And then it gives examples. And then it gives examples. Let me ask my question because you're running out of time. I'm sorry. I want to make sure that you have an opportunity to address my concern. Washington does talk about what's appropriate and what's clearly established in the context of a Terry stop. And I think what Washington really makes clear is that even before Washington, the law has already been clearly established that in a Terry stop situation, highly intrusive detention methods are not appropriate absent some specific danger signs, for example, or extraordinary circumstances. And I don't see those in this case. The danger sign in this case is this gun. The gun, this is not a regular traffic stop or just... Right. We're not talking about the initial stop, right? Which you used at the district court for resolve. The gun is never found. This gun is out there somewhere. The mission of these officers is to find this gun and stop the shooting. What ties her to this particular, at the point that they handcuffed her and put her in the car and kept her there? And this is going to get back to what your honor was talking about in terms of the risk profile and how this fact... Washington's factors that... Washington's examples that he cites for special circumstances, all are done in the context of Washington, which focuses on the risk posed by the detainee, which is what you're talking about. In this case, the officers responding to this gun call with the missing firearm and multiple people over there and the risk came not from the detainee so much as it came from the missing gun. So, Washington is evaluating intrusiveness based on the danger of the detainees that they had and when the detainee is a source of risk... So, your argument is that nothing specific as to Ms. Houston, the fact that there was a gun out there somewhere on the scene, that basically justifies the detention here. This is what I'm getting to. When the source of the risk is the detainee, then once they're secured, the justification for continuing to detain them, to restrain them is over. But when the safety risk is not the detainee, but the circumstances that they're facing that she is connected to, the justification for continuing to detain her remains. I don't know any case that extends Terry in such a broad manner as you're describing because the whole purpose of the Terry stop is you don't have probable cause to arrest someone, but in order to secure the safety of the officers or those in the immediate surroundings, you can perform a type of protective search to make sure that everything is okay. But you're saying we don't need to look at Houston herself for any kind of a risk profile. We can justify extending a Terry stop over this broader thing where there's a slew of other officers somewhere else. What's the case that would even support that kind of idea? Right, so number one, Ms. Houston is still involved in this from a safety point of view because you cannot unrestrain her until that car is searched. The gun could be in that car. There's still a danger. And so it's still appropriate to restrain her. But the bigger point is, we're not looking for cases that disprove what these officers are doing. We're looking for cases under the clearly established prong that specifically instruct them that what they are doing is unlawful. All right, counsel, you're actually over time, but I'll put a couple of minutes back on the clock for your rebuttal. I know you wanted to save a few minutes. Yeah, thank you very much. Good morning, Your Honors. Is there sharing time in this case too? We are sharing time, yes. Are you splitting issues as well or just sharing time? We're splitting it. We'll see how it goes, but I have co-counsel Mr. Schmidt here, and he was a counsel in the district court, so he's hoping to shed some light on some of the facts and concessions that were made there. So thank you, Your Honors. I represent Ms. Houston, and I'm gonna start with Ms. Houston. I'm gonna start first where we left off, which is whether Washington, whether that analysis looks at whether Ms. Houston is a risk or whether it can consider whether other people is a risk. And I think that all of the line of cases of Washington and all that follows are looking at whether the person is a risk to justify those intrusive measures. And the district court is correct to view it that way as well. That's why the district court says that what's happening in the parking lot doesn't affect whether Ms. Houston is dangerous under those Washington factors. And so I don't think you need more than Washington, but even if we did, we have Cialoi. That's another Ninth Circuit opinion where it actually, those officers in Cialoi faced the identical risk level as here. In that case, an apartment manager had called in and reported that he saw two people with a gun. When the officers arrived, they don't see anything but a peaceful scenario. And yet everybody's in handcuffs because they wanna look for the gun and handcuff first and then investigate later. That case stands for the proposition that you can't handcuff a non-suspect because you're worried that there's a report that somebody else has a gun. That puts these officers on notice that Ms. Houston can't sit handcuffed in a patrol car because they're worried about a report that somebody earlier had a gun. And I do think also it's important that there's sort of two aspects to what makes a Terry stop into an arrest. It's the methods used and it's also the time, but they're governed by different standards. When they're looking at the intrusiveness of the methods, at the handcuffing, keeping in a patrol car, then they're talking about safety. And they're saying, does this person pose a safety threat? When you're talking about the amount of time, that's where you come to the sharp, you know, Roy or Evans line of cases. And that looks at whether the officers diligently perform an investigation that's likely to confirm or dispel suspicion. That does not- On that diligence inquiry, what I hear counsel arguing is that, well, there was another scene that needed to be taken care of. They hadn't completely made the determination that the gun wasn't in her car and that justifies the prolonged detention. How do you respond to that? The response to that is that it depends on whether we're talking about, you know, logistics and manpower, which they've discussed a lot as being a justification to abandon their search. They're, you know, quickly searching to see whether Ms. Houston, the gun is in her car. To that extent, Chamberlain governs. Chamberlain stands for the proposition that if you're holding one, if you don't have probable cause, there, that's one officer, he comes across two people he has reason to suspect, reason to detain, and they're both flea. He catches one, stuffs him in the car, and then is actively pursuing the other because he wants to detain that person. That stands for the proposition that you can't hold one person on reasonable suspicion in order to execute a detention of another person on reasonable suspicion. And that's even if they're suspected of the same crime. So here, that puts them on notice. They can't stop investigating Ms. Houston in order to go detain. And then there's also the problem- Would it be different if the number of officers in the parking lot were clearly understaffed? You know, that two of them facing a whole crowd of people, would that change the circumstances in some way? It doesn't in the sense that Chamberlain, there's only one officer, and he can't catch that second person unless he holds the first. I mean, so no, manpower alone, to the extent that's a safety risk, well, then you're talking about, again, we've got C. Aloi, where you can't hold someone based on the safety risk, you know, you perceive that somebody else poses. And here, specifically, a report that somebody once had a gun where they're not facing anything. There's no active scenario. And I did want to address that as well. You know, they characterize this. I think it's important and misleading to characterize this as an active gun threat because, you know, they have this prior report, but when they arrive on scene, Hill observes it for several minutes. It's peaceful. People are chatting. They're shopping. There's nothing active about it. And even when the police come in and start seizing everybody, there's no report that somebody is resisting arrest. Nobody ever pops up with a gun. This is not active. It's the exact identical threat level to C. Aloi, which makes, you know, that case makes clear. Safety measures, these handcuffing and putting Ms. Houston in a patrol car is not justified by a report that somebody else has a gun. They know she's not a suspect. And you only need Washington for that. The reason they, in Washington, there was a scary bank robbery, but they can't hold those people because they're not the suspect. So let's see. What about Officer Reeves not doing anything during, I mean, is that an argument more towards the diligence side of things or both? It's an argument that it's unnecessarily intrusive, that it was overlong. I don't think we need Reeves because the way the district court looked at it is correct. When they stop her, they have four officers. You know, they're sending them over one by one, but they have plenty of officers to have her stand next to them while they briefly ascertain whether that gun is in her car. As to Reeves specifically, there's no evidence that one person can't execute a search of the car. He is there with her. She's compliant. She's unarmed. You know, at most they come up on reply with a citation to a Lexapro policy, you know, cited for the first time on reply in an appellate brief, not in evidence of the district court. And most importantly, we don't have the benefit of expert testimony to say what it means to leave someone unattended in a car. Her car's parked directly in front of his. Our position is he could have executed, but we don't even need that because what's key is, and the way the district court looks at it, is that the violation here is that when she's stopped, there are four officers attending to her. She is compliant. They frisk her. She's unarmed. Once they've cleared the car, the violation is that she then spends 17 minutes in a patrol car handcuffed without a safety justification specific to her. And additionally, that eight minutes, that's longer. I mean, this court has said that's not de minimis. There's multiple cases. That's Evans and Rodriguez. Both, these are eight minute extensions that they find a constitutional violation because they exceed the limits of a Terry stop. If we look here, it seems to me, you're arguing two constitutional violations. One, that the detainer was overly intrusive. And two, that it was unreasonably prolonged. Is that true? That is true. What is your best case for that? It was overly intrusive. That it was overly intrusive. The best case is Washington. All you need is Washington. Well, you could do Washington, but there are some differences in Washington. Have you looked at Del Vizo? Yes, Del Vizo. What about Del Vizo? That's a great case too, because what's similar about that case is that there was a hypothetical. The court interprets that case in Washington. That's a case where they suspect the person of being a drug dealer. They pull them over, but they say once he's out of the car, once he's unarmed, once he's away from the van, he poses no further risk to the officers, and intrusive measures are not justified. And so that really speaks more to the overly intrusive, really, than Washington itself, doesn't it? Yes, thank you, Your Honor. That is my best case. Yes, I agree. All I'm trying to do is sum this up, because I said, okay, what's this lady really after? She thinks it's overly intrusive, and she thinks it's unreasonably prolonged. So I ask her about the unreasonably prolonged, and I ask you about the overly intrusive, and I'm just trying to make sure I'm on the right boat. And I want to note that the district court found both, had found both, that it's used an unreasonably intrusive. Yes, yes. You're in agreement with your esteemed colleague on the other side that there's no factual disputes here, right? We're here only to determine whether under these undisputed facts, qualified immunity applies. Yes, I mean, and we have the facts under for qualified immunity, all of those facts to the extent there were a dispute are viewed in our favor. And there's video evidence, extensive video evidence in this case. So it's an easy call to- Well, I asked because of the summary judgment ruling in this case too. Yes, they've made quite clear that's not at issue. And because of all that video evidence, because there's no, they're not saying maybe she was uncompliant, maybe she was. It's clear what happened here. It's clear what the threat level was. There's no argument that somebody popped up somebody was misbehaving. And I see my time is up, so I'll- Thank you, counsel. Good morning, your honors. May it please the court. Sanjay Schmidt, I'm here. And our client, Ms. Houston is present in court. I wanted to address the diligence issue briefly. After Ms. Houston's car had been cleared of any occupants and after she had been extracted from her vehicle at gunpoint, handcuffed, and then searched, she's placed in the car and appellant officer Bassey states, quote, we'll just stuff her here for a few. And that's as he closed the door on her, as she looked out, wondering how long she's gonna be in the car. And that's at 645 on his body worn camera. And in response to officer Bassey stating, we'll just stuff her here for a few. Appellant Sergeant Reeves states, no, that's fine. We're not in a hurry. And I would respectfully submit, far more diligence was due. The Fourth Amendment demanded far more diligence than we'll just stuff her for a few. That's okay, we're not in a hurry. Clearly established Fourth Amendment law put the officers on clear notice that they were required to diligently pursue a means of investigation likely to confirm or dispel their suspicions with respect to Ms. Houston quickly. And that's on pages 64 through 66. So we're really talking about unreasonably prolonged year? Your Honor, there's, you know. I mean, I've just got your two issues that- Okay. Counsel said, and I'm trying to focus now your argument onto one of those issues. Doesn't seem to me really you're talking about overly intrusive. You're saying they should have been more diligent so they unreasonably prolonged. Is that what you're arguing? Well, I think that both of those violations occurred. Because I don't find any case law that says they got to be diligent necessary. Because diligent is, but what I'm trying to figure out is how do the police officers know? And that's why I ask you the question. How do, what case tells them? Well, we say sharp. We say United States versus Evans. All right. And we're assuming based on this qualified immunity theory that police officers read Ninth Circuit opinions and Supreme Court opinions. And so based on that premise, we have to assume that the police officers had read Washington, that they had read Del Vizo, that they had read Chamberlain, and they had read sharp. And based on the Polanco case, which is cited in our brief, who established clearly, established law in order to defeat qualified immunity, a plaintiff can synthesize the holdings of all the different cases in order to address different phases and different components of an incident. Now, the other fact that I wanted to point out to your honors is that the appellants have characterized this incident as very unique and unforeseeable. I'm paraphrasing, but that's how they've characterized it. However, that's completely contradicted by the testimony of their own officers. In the words of Officer Smith, who was present, this incident was very unspectacular. Nothing stood out. And that is at ER 1033 through 1034. There was never a meeting to debrief about this incident. And the reason is because this was the standard operating procedure for the city of Fairfield. Anytime there was any kind of a gun call, they would freeze the scene. And as laudable as that might be, we know from Ibarra and Cibrone, which are clearly established Fourth Amendment cases, the Fourth Amendment protects people, not places. And essentially, the only suspicion that they had as to any of the individuals that were seized over at the parking lot was that they were in mere propinquity to another individual who had been misidentified, unfortunately, by the dispatcher. But we're not looking at any Monell issues here on appeal, though. On appeal, we're not. But the import of that is that this was not an unusual scenario. It wasn't unique. And I wanted to point out one other important fact, which is that the seizure order was issued by Hill 42 seconds before any man ever walked up to Ms. Houston's car and conversed with her as she pulled out. And I know that technically, they can still rely on that and view that. But I just want to point out that Ms. Houston and the clearly established, the undisputed evidence establishes she was going to be seized no matter what because the seizure order was issued and Hill admitted that when he issued that order, she was going to be pulled over no matter what. Now, one other brief fact that I wanted to point out for the court with respect to the characterization of this as an active gun threat, there was no active gun threat because this gun was never pointed. The undisputed evidence established that. It was never shot. We had at most facts that established a misdemeanor brandishing offense. They all admitted that they had no facts upon which to base any suspicion that a felony had been committed. Now, I know in the reply brief, they raised the question of, well, maybe the man who had committed the brandishing could be a felon. They didn't know that. They had no facts to support that. It was equally possible the man who possessed the firearm was lawfully in possession of it and he had withdrawn it from the backpack in self-defense and he might've lawfully been in possession of the gun. We don't know either way. The only facts-  Thank you, counsel. Thank you. If you can put two minutes on the clock. Okay. Just a couple of quick points and try to encapsulate all of this in pieces that we can easily digest. First of all, we're talking about the clearly established prong of the qualified immunity analysis and not a single case that counsel briefed or that counsel talked to you about this morning squarely governs factually the case before these officers. That is fatal to a clearly established qualified immunity argument that qualified immunity doesn't apply. They have to be factually. Del Faiso, which counsel said was their best case, was a drug investigation case. It didn't have any facts like this. The Saleo case was a birthday party case where the officers went to a birthday party and didn't have any information. They got the wrong people and they just handcuffed a whole party of kids. They searched people's houses. They didn't have any basis for doing that. Not these facts. Chamberlain, Washington, Evans and Rodriguez are routine traffic stop cases that were completed. And then the officers extended them to do drug investigations. None of that has anything to do with the case, factually, that is before the court now. Second, with respect to the diligence, the district court found that the only issue was the eight minutes. It didn't find that the handcuffs and putting her in the patrol car were too intrusive. It found it was intrusive because she sat there for the extended period of eight minutes. That's the issue. The reason that Officer Reeves could not- That's why Chamberlain seems pretty important because in that instance, it was somewhat similar. No gun surrounding the whole thing, which you constantly suggested. But in that case, it was absolutely clear. And it was before this particular case that it was too long to go do something else. Well, what the officers were doing in this case, the other thing that they were doing in this case was directly related to the problem that they were all responding to. It was a single unified response and they were coordinating their efforts over the parking lot and the car. This was not a random stop for plaintiff. They watched somebody, a suspect in the parking lot, lean into the car and they couldn't see the hands and they had reasonable suspicion to think the gun was in there. That's why it was important for her to continue to be restrained. It was a safety risk. Officer Reeves could not leave her alone in that car and go search while Officer Bazzi was gone because he has an obligation to attend to her. The door had to be open because it was very hot and she was complaining about her breathing issues with her asthma. I think we've got your argument, counsel. I thank all counsel for your arguments this morning. We appreciate it. The matter is submitted and the court is in recess until nine o'clock tomorrow.
judges: SMITH, NGUYEN, SANCHEZ